J-S23042-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHAEL ELLIOTT | : | |
| | : | |
| Appellant | : | No. 2606 EDA 2017 |

Appeal from the PCRA Order July 25, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005442-2010

BEFORE: SHOGAN, J., NICHOLS, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.: **FILED JUNE 12, 2018**

Appellant, Michael Elliott, appeals *pro se* from the order entered in the Court of Common Pleas of Philadelphia County dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Herein, Appellant contends he is entitled to a new trial based on trial counsel's ineffective assistance in foregoing a pretrial motion to suppress his confession as the product of an illegal arrest, in interfering with his right to testify, and in failing to file a post-sentence motion raising a weight of the evidence challenge to the verdict. We affirm.

The PCRA court aptly relates the pertinent facts and procedural history of the case, as follows:

> The factual background of this matter is set forth in the [trial court's] Rule 1925(a) opinion filed in Appellant's direct appeal as follows:

_____

* Former Justice specially assigned to the Superior Court.

These charges arose out of an incident that occurred on April 7, 2010, at approximately 2:00 a.m. Earlier that morning, the decedent, Rachel Marcelis ("Marcelis") and her friend, Gina Fehr ("Fehr") were sitting in Fehr's car smoking marijuana, outside of Fat Pete's Bar in Northeast Philadelphia. As they were smoking, Fehr's boyfriend, David DiPersio ("DiPersio") and Appellant came to the car and began chatting with Fehr and Marcelis. DiPersio and Appellant got into Fehr's car and sat in the driver's seat and passenger's seat, respectively. Fehr then sat on DiPersio's lap, while Marcelis sat leaning against the dashboard of the car on Appellant's lap with the doors open. The four (4) individuals smoked marijuana and as they did, Appellant pulled out a gun. Fehr asked Appellant to put the gun away and Appellant stated that he was licensed to carry.

Appellant then removed the clip from the gun and the gun was fired. Marcelis was hit with one (1) bullet to the chest and immediately asked the others to call 9-1-1. After seeing Marcelis was hit, Appellant got out of the car, causing Marcelis to fall into the street, and ran to his mother's house at 6123 Hegerman Street in Wissinoming. Upon arriving at his mother's house, Appellant went to the basement and changed his clothes. Appellant then came upstairs where he spoke with his mother before Police Officers Andre Hudgens ("Hudgens") and Ashley Johnson ("Johnson") arrived. Hudgens and Johnson questioned Appellant [at his mother's home] regarding the incident . . . and then transported Appellant to the Homicide Unit.

Medics responded to the 9-1-1 call and Marcelis was transported to Aria Health – Frankford Campus. Marcelis was shocked three (3) times during transit and was given six (6) rounds of ACLS medication before being pronounced dead at 2:45 a.m.

Trial Court Opinion, filed November 27, 2013, at 2-3.

On January 17, 2013, following a jury trial before the Honorable Lillian H. Ransom, [Appellant] Michael Elliott was convicted of one count each of third-degree murder (18 Pa.C.S. § 2502(c)),

- 2 -

possessing a firearm without a license (18 Pa.C.S. § 6106), and carrying a firearm on a public street or public property in Philadelphia (18 Pa.C.S. § 6108). On March 5, 2013, Judge Ransom sentenced Appellant to an aggregate term of fifteen to thirty years' incarceration. Appellant's post-sentence motion was denied by operation of law on July 16, 2013.

Appellant subsequently filed an appeal on July 18, 2013. On December 15, 2014, the Superior Court affirmed Appellant's judgment of sentence. The Supreme Court denied allocator on October 26, 2015. Appellant then filed a *pro se* petition, with an accompanying brief in support thereof ("Brief in Support of Petition"), under the PCRA on November 6, 2015. Stephen O'Hanlon, Esquire was appointed to represent Appellant on May 16, 2016.

With Judge Ransom having been elevated to the Superior Court, this matter was assigned to [the Honorable Glenn B. Bronson] on November 11, 2016. Appellant subsequently requested to proceed *pro se*, and after a ***Grazier***[1] hearing, the [PCRA court] permitted Appellant to do so. On May 26, 2017, after reviewing Appellant's petition and the Commonwealth's Motion to Dismiss, the [PCRA court] ruled that the claims set forth in Appellant's petition were without merit. On that day, pursuant to Pa.R.Crim.P. 907, the [PCRA court] issued notice of its intent to dismiss the petition without a hearing ("907 Notice"). On July 25, 2017, the [PCRA court] entered an order dismissing Appellant's petition.

Appellant has now appealed the [PCRA court's] dismissal of his petition, alleging that trial counsel was ineffective for: 1) failing to seek suppression of the inculpatory statement that Appellant made following his [purportedly] illegal arrest; 2) refusing to permit Appellant to testify based on incorrect and misleading factors; and 3) failing to challenge the weight of the evidence in a post-sentence motion, thereby waiving the issue on appeal. Statement of Matters Complained of Pursuant to Rule of Appellate Procedure 1925(b) ("Statement of Errors") at ¶¶ 1-3.

_____

[1] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998) (holding court must determine on record that indigent defendant wants to proceed *pro se*, to ensure waiver of counsel is knowing, intelligent and voluntary).

PCRA Court Opinion, filed 10/5/17, at 1-3.

Appellant's Statement of Questions Presented raises the following three questions for our review:

> **I.     SHOULD THE INDICTMENT BE DISMISSED AGAINST THE APPELLANT AS A RESULT OF AN ILLEGAL ARREST WITHOUT PROBABLE CAUSE IN VIOLATION OF THE 4TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 8 OF THE PENNSYLVANIA CONSTITUTION AND IS THE APPELLANT ENTITLED TO A NEW TRIAL BASED ON COUNSEL'S INEFFECTIVENESS FOR FAILING TO SEEK SUPPRESSION OF HIS INCULPATORY STATEMENT MADE AFTER HIS ILLEGAL ARREST?**

> **II.    IS THE APPELLANT ENTITLED TO A NEW TRIAL BASED ON TRIAL COUNSEL'S INEFFECTIVE ASSISTANCE IN REFUSING TO PERMIT HIM TO TESTIFY BASED ON INCORRECT FACTORS?**

> **III.   WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO FILE POST SENTENCE MOTIONS THEREBY WAIVING THE APPELLANT'S ARGUMENT AGAINST THE WEIGHT OF THE EVIDENCE ON APPEAL?**

Appellant's brief at 4-5.

> This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Halley*, 582 Pa. 164, 870 A.2d 795, 799 n. 2 (2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa.Super. 2001).

> *Commonwealth v. Turetsky*, 925 A.2d 876, 879 (Pa.Super. 2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007).

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. ***Commonwealth v. Jordan***, 772 A.2d 1011, 1014 (Pa.Super. 2001). It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. ***Id.*** It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. ***Commonwealth v. Hardcastle***, 549 Pa. 450, 454, 701 A.2d 541, 542–543 (1997).

> ***Id***. at 882, *quoting* ***Commonwealth v. Khalifah,*** 852 A.2d 1238, 1239–1240 (Pa.Super. 2004).

> To prevail on a claim alleging counsel's ineffectiveness under the PCRA, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different. ***Commonwealth v. Kimball***, 555 Pa. 299, 724 A.2d 326, 333 (1999); ***Commonwealth v. Douglas***, 537 Pa. 588, 645 A.2d 226, 230 (1994).

> ***Commonwealth v. Bracey***, 568 Pa. 264, 276, 795 A.2d 935, 942 (2001).

***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa.Super. 2012).

In both Appellant's Rule 1925(b) statement and his appellate brief, he first contends that counsel rendered ineffective assistance by failing to file a pretrial motion seeking suppression of his incriminating statement, as it was

the product of an illegal arrest effected without probable cause.  Specifically, Appellant maintains that police officers impermissibly relied solely on an anonymous tip to locate his residence and arrest him.

It is undisputed that Appellant was subjected to a warrantless arrest at the conclusion of the officers' questioning inside his home.  Thus, the arresting officers were required to possess probable cause to justify that arrest.  **See In Interest of O.A.**, 717 A.2d 490, 495 (Pa. 1998) ("In order to be constitutionally valid under the Fourth Amendment to the United States Constitution, a warrantless arrest must be supported by probable cause."). This Court has summarized that:

> Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.
>
> Probable cause justifying a warrantless arrest is determined by the totality of the circumstances.
>
> Probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act.  It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause.  To this point on the *quanta* of evidence necessary to establish probable cause, the United States Supreme Court recently noted that finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision.

**Commonwealth v. Dommel**, 885 A.2d 998, 1002 (Pa. Super. 2005) (internal citations, quotation marks, and brackets omitted).

In an attempt to advance his position that he was subjected to an illegal arrest, Appellant directs this Court to **Terry**[2] jurisprudence invalidating searches and seizures of incriminating evidence supported only upon an anonymous tip without independent police corroboration. **See** Appellant's brief at 9 (discussing **Commonwealth v. Wiley**, 858 A.2d 1191 (Pa.Super. 2004) (holding single anonymous tip alone insufficient to justify seizure; mere corroboration of suspect's features with information from call did not create reasonable suspicion to allow immediate investigation through temporarily maintaining *status quo*)). Setting aside the fact that Appellant has, with this argument, conflated the reasonable suspicion standard applicable to investigatory detentions with the probable cause standard applicable to arrests,[3] we find that the record belies Appellant's underlying assertion that the officers relied solely on an anonymous tip to arrest him.

_____

[2] **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

[3] We have acknowledged the following approach to police/citizen encounters under both the Fourth Amendment and Article 1, Section 8:

> This Court has noted that there are three basic categories of interactions between citizens and the police. The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative detention, derives from **Terry v. Ohio** and its progeny: such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final

category, the arrest or custodial detention, must be supported by probable cause.

*Commonwealth v. Moyer*, 954 A.2d 659, 663 (Pa.Super. 2008) (*en banc*) (quoting *Commonwealth v. Smith*, 575 Pa. 203, 836 A.2d 5, 10 (2003)).

Initially, we note *Wiley* is not only inapposite to the issue of whether officers arrested Appellant without probable cause, it is also factually distinguishable. In *Wiley*, an officer received a 9-1-1 dispatch relating an anonymous tip that a man entered a nearby barbershop with a gun in his waistband. The officer arrived at the barbershop one minute later with his gun drawn and immediately directed Wiley to raise his hands. The officer recovered the gun from Wiley and arrested him. As noted above, this Court held the officer lacked reasonable suspicion to support the *Terry* search and seizure and required suppression of the handgun.

In contrast, investigating officers in the case *sub judice* used the anonymous tip to locate the residence to which Appellant fled, but once there, they did not present with a show of force as was done in *Wiley*. Instead, the officers knocked on the front door and received Appellant's stepfather's permission to enter. N.T. 1/15/13 at 78. The stepfather called everyone downstairs, and the officers, observing that Appellant matched the description given in the tip, asked Appellant how long he had been home that night, to which Appellant answered "ten minutes" and began to cry. N.T. at 79. Appellant then admitted he was in the vehicle when the shooting occurred but denied responsibility for the shooting. *Id*. Appellant also admitted to fleeing the scene once the victim was shot. *Id.* At this point, given the totality of circumstances known to the officers, including Appellant's admissions, police arrested him.

The record establishes, therefore, that police were lawfully in Appellant's mother's home at the time they spoke with Appellant, as Appellant's stepfather admitted them voluntarily. *Cf. Commonwealth v. Gonzalez*, 979 A.2d 879, 886 (Pa.Super. 2009) (collecting cases holding Fourth Amendment recognizes valid warrantless entry and search of premises when police obtain voluntary consent of occupant). The record further supports the conclusion that the officers did not employ coercive measures in addressing Appellant. Appellant came downstairs at his stepfather's request and voluntarily answered the officers' first question, which asked how long he had been home, by breaking down in tears. He subsequently admitted to being in the car at the time of the shooting and fleeing immediately thereafter. As such, the

Contrary to Appellant's argument, the officers had other information in addition to the anonymous tip to provide them with probable cause to arrest Appellant. The anonymous tip describing Appellant's physical appearance enabled the officers to pursue an eyewitness's lead to Appellant's home, where they knocked on the door of the residence and asked permission to enter. Appellant's stepfather, who was free to refuse the officers' request, allowed the officers entry. From there, the grandfather called everyone downstairs, and the officers observed that Appellant fit the description given over the dispatch.

Moreover, Appellant broke down in tears when asked how long he had been home, and he volunteered he was in the car when the shooting took place and fled the scene immediately thereafter. Only then did officers place him under arrest and bring him to the stationhouse for further questioning.

Therefore, the officers did not predicate their arrest solely on the anonymous tip, but had ample additional information corroborating that tip and pointing to Appellant as a key suspect in the victim's shooting. Accordingly, as we agree with the PCRA court that the officers possessed probable cause to arrest Appellant, we discern no arguable merit with Appellant's first ineffective assistance of counsel claim.

---

totality of circumstances present in this case bears no relation to that present in either *Wiley* or other decisional law cited by Appellant on this issue.

In his second ineffectiveness claim, Appellant charges trial counsel with refusing to permit him to testify on his own behalf. Specifically, Appellant alleges he advised counsel of his wish to tell the jury exactly what happened on that night, but counsel insisted that he not take the stand lest the Commonwealth impeach him with his prior *crimen falsi* record. Appellant asserts that he had no *crimen falsi* record, which rendered counsel's advice erroneous and constitutionally ineffective.

A criminal defendant's decision whether to testify in his own defense or remain silent is a basic fundamental right grounded in both our national and Commonwealth's Constitutions. **See** U.S. Const. Amdt. 5; Pa. Const. Art. I, § 9. Generally, a defendant cannot successfully claim ineffective assistance of counsel for failing to call him to testify after a defendant has voluntarily waived his right to testify in a colloquy, unless certain exceptions are established. **Commonwealth v. Rigg**, 84 A.3d 1080, 1086 (Pa.Super. 2014) (citing **Commonwealth v. Peay**, 806 A.2d 22, 29 (Pa.Super. 2002)); **Commonwealth v. Schultz**, 707 A.2d 513, 520 (Pa.Super. 1997).

> In order to sustain a [PCRA] claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

**Commonwealth v. Nieves**, 746 A.2d 1102, 1104 (Pa. 2000) (quoted by **Commonwealth v. Michaud**, 70 A.3d 862, 869 (Pa.Super. 2013)).

The PCRA court rejected Appellant's claim on two grounds. First, the court observed that counsel's advice was correct, for Appellant's prior conviction for the unauthorized use of a motor vehicle involved a *crimen falsi* offense that may be admissible for impeachment purposes. ***See Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1263 (Pa.Super. 2014) (holding 18 Pa.C.S. § 3928, unauthorized use of a motor vehicle is a *crimen falsi* offense). Second, the court conducted an extensive colloquy of Appellant on the issue where Appellant confirmed that, after lengthy consultation with trial counsel, it was his own decision not to testify. Appellant's second ineffectiveness claim, therefore, is devoid of merit.

Finally, Appellant assails trial counsel for failing to file a post-trial motion challenging the weight of the evidence, thereby waiving the issue or purposes of direct appeal. "Nowhere in the testimony is [there] any evidence to show that the Appellant acted with any malice[,]" Appellant maintains. Appellant's brief at 17. Counsel's failure to file a post-sentence motion basing a weight of the evidence claim upon this argument prevented Appellant from presenting this meritorious claim, he contends.

By claiming the element of malice went unproven at trial, however, Appellant conflates his underlying weight of the evidence challenge with a sufficiency challenge. It is well-settled that "[a] challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that *the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime*, "but questions which evidence is to be believed."

*Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa.Super. 2006) (emphasis added). Here, Appellant does not argue that evidence suggesting the absence of malice was so clearly of greater weight than evidence of the presence of malice that the verdict of guilt shocks one's sense of justice. Instead, he argues there was no evidence of malice, which asserts the distinct challenge that the Commonwealth failed to produce sufficient evidence in the case.[4] As Appellant has, therefore, failed to advance his underlying weight of the evidence claim properly, we find it is without arguable merit and may not support his ineffective assistance of counsel claim.[5]

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/18

_____

[4] Appellant previously advanced this very argument within the context of his sufficiency of the evidence challenge on direct appeal, to no avail.

[5] The PCRA court denied Appellant's weight of the evidence-based ineffectiveness claim for reasons expressed in the trial court's Pa.R.A.P. 1925(a) opinion addressing the merits of Appellant's weight claim raised in his Rule 1925(b) statement. As we agree with the trial court's merits-based analysis of Appellant's weight claim, we, too, would reject Appellant's claim for the same reasons had Appellant presented an appropriate argument warranting merits review.